J-S25004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: M.S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.L.F., JR., FATHER | : | No. 11 MDA 2019 |

Appeal from the Decree Entered December 4, 2018
In the Court of Common Pleas of Dauphin County
Orphans' Court at No:  100-AD-2018

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                **FILED JULY 05, 2019**

A.L.F., Jr. ("Father"), appeals from the decree entered December 4, 2018, terminating involuntarily his parental rights to his minor son, M.S.S. ("Child"), born in March 2014.[1]  After careful review, we affirm.

We glean the facts and procedural history of this case from the certified record.  Child has an extensive history of involvement with the child welfare system, beginning with an adjudication of dependency in Lancaster County in 2014.  Reportedly, Father did not learn that Child existed until approximately December 2016.  Father obtained custody of Child in May 2017, ending his dependency.  However, Dauphin County Social Services for Children and Youth ("the Agency") took Child into protective custody in October 2017, after Father beat Child and caused severe and extensive bruising all over his body.  The

_____

[1] The trial court entered a separate decree terminating the parental rights of L.A.S. ("Mother") that same day.  Mother did not appeal the termination of her parental rights, nor did she participate in this appeal.

trial court adjudicated Child dependent for a second time on November 29, 2017, and the Agency placed him in the same foster home where he resided during his prior adjudication of dependency in Lancaster County.  On February 22, 2018, the court found aggravated circumstances against Father, on the basis that he had committed physical abuse against Child resulting in serious bodily injury, and relieved the Agency of its obligation to provide reunification services.

Meanwhile, Father faced felony criminal charges for aggravated assault and endangering the welfare of children resulting from the same incident.  He pleaded guilty in August 2018 and later received a sentence of nine to twenty-three months of incarceration at the Dauphin County Work Release Center for the aggravated assault conviction.  He received a concurrent sentence of nine months of incarceration at the Work Release Center followed by twenty-seven months of probation for the endangering the welfare of children conviction.

The Agency filed a petition to terminate Father's parental rights to Child involuntarily on September 19, 2018.  The trial court conducted a hearing on December 4, 2018, at the conclusion of which it dictated a decree terminating Father's rights.[2]  The court entered a written decree memorializing its decision

---

[2] The trial court granted the motion of Child's dependency guardian *ad litem* in which she averred that no conflict existed between Child's legal interests and best interests, and requested that the court permit her to serve as Child's legal counsel during the proceedings.

later that day. On December 28, 2018, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Father now presents the following claims for our review:

1. Whether the trial court abused its discretion in changing the goal to adoption?

2. Whether the trial court committed reversible error by terminating [Father's] parental rights?

Father's Brief at 10 (unnecessary capitalization and suggested answers omitted).[3]

We review these claims mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

---

[3] While Father purports to appeal from the order changing Child's permanent placement goal from reunification to adoption, the certified record indicates that he filed a notice of appeal from the termination decree only. As a result, this Court lacks jurisdiction to review the goal change order. We also observe that, because Father failed to appeal from the goal change order, this Court did not receive Child's dependency record. Thus, we cannot confirm whether a goal change order even exists. While Father indicates in his brief that he is appealing the "Order for Goal Change to Adoption and Decree of Involuntary Termination of Parental Rights," the actual text of the document states that it is a "Decree of Involuntary Termination of Parental Rights" only and does not mention a goal change. **See** Father's Brief at 6 (unnecessary capitalization omitted). Because of Father's procedural missteps, we do not address his goal change claim on appeal.

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis.

> . . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (9), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision pursuant to Section 2511(a)(9) and (b), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

*** 

- 4 -

(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

\*\*\*

(ii) a felony under 18 Pa.C.S.[A.] § 2702 (relating to aggravated assault);

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

\*\*\*

23 Pa.C.S.A. § 2511(a)(9)(ii), (b).

As the trial court explained in its opinion, Father was convicted of felony aggravated assault against Child.  Trial Court Opinion, 2/15/19, at 5.  Father does not attempt to challenge the existence of this conviction on appeal.[4]  It was undisputed during the hearing that Father pleaded guilty to aggravated assault, graded as a felony of the second degree, and endangering the welfare

---

[4] In the argument section of his brief, Father does not acknowledge that the trial court terminated his rights pursuant to Section 2511(a)(9).  Father does not mention that section at all and focuses the substance of his argument on Section 2511(a)(2).  **See** Father's Brief at 19-20.

of a child, graded as a felony of the third degree. N.T., 12/4/18, at 9, 34. He admitted to the plea during his testimony, and the Agency entered related documents into evidence, including a docket sheet and written plea colloquy. *Id.* at 28, 33-34; Exhibits 19, 23. Accordingly, the record supports the court's decision to terminate pursuant to Section 2511(a)(9).

We next consider if the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b).

> . . . . Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

The trial court found that Child has spent only five months of his life living with Father. Trial Court Opinion, 2/15/19, at 7. The court found that Child has spent the majority of his life in foster care, and that he receives safety, stability, and love in his current foster home. *Id.* The court concluded that it would "not disrupt the permanency and stability which [Child] enjoys based upon the hope that Father can acquire and maintain the necessary skills to properly parent [Child]." *Id.*

In response, Father contends that he has a bond with Child and that the trial court failed to consider the impact that severing that bond would have on Child. Father's Brief at 21. He further contends that the court erred by failing to consider that his lack of visits with Child resulted from the no-contact order imposed in his criminal case. *Id.*

Father is not entitled to relief. As the trial court discussed, Child spent only five months of his life living with Father, from May 2017 to October 2017. N.T., 12/4/18, at 4-5, 8, 28. Father testified that he has not seen Child at all since October 30, 2017, due to his no-contact order. *Id.* at 30-31. Notably, the court heard the testimony of psychologist, Howard S. Rosen, Ph.D., who conducted a psychological evaluation of Father. *Id.* at 17. Dr. Rosen did not conduct a bonding evaluation of Child and Father, but noted that, given their lack of contact, "it would be remarkable if there was a bond[.]" *Id.* at 20; *see In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) ("In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists.").

In contrast, Child had been living with his foster family for thirty-eight months at the time of the termination hearing. N.T., 12/4/18, at 10. Agency caseworker, Jerri Swavely, testified that Child is "very bonded" to his foster family, including his pre-adoptive foster parents and the other children in the home. *Id.* at 10-11. Dr. Rosen agreed that Child was more likely to have a bond with his foster parents than with Father, observing that they are his "consistent caregivers who show nurturing and attention to his needs[.]" *Id.* at 20, 23; *see Matter of Adoption of M.A.B.*, 166 A.3d 434, 449 (Pa. Super. 2017) ("[A] child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended period of time.").[5] Therefore, the record supports the decision of the trial court to terminate Father's parental rights involuntarily pursuant to Section 2511(b).

Based on the foregoing, we conclude that the trial court did not abuse its discretion by terminating Father's parental rights to Child involuntarily. Therefore, we affirm the court's December 4, 2018 decree.

Decree affirmed.

---

[5] While Father suggests that the trial court should have excused his lack of a bond with Child due to his no-contact order, this argument is meritless. The existence of Father's no-contact order is unquestionably his fault, and does not outweigh the safety, permanence, and stability that Child will receive by remaining with his foster parents.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/05/2019